Hear ye, hear ye. This Honorable Appellate Court for the Second Judicial District is now open. Honorable Robert D. McLaren presiding. Your Honor, the second case on the docket this morning is 2-20-0354 in re Estate of Sarah C. Weber, body law firm PC, plaintiff appellant cross appellee, the Andrew W. Schmidt defendant appellee cross appellant. Arguing for the appellant cross appellee, Mr. Aldo E. Botti. Arguing for the appellee cross appellant, Mr. Thomas A. Christensen. And how are we allotting the time? Because of the cross. I believe it's going to be 15-20. Excuse me, that's my apologies. I believe it's going to be 15-20-10-5. I would mention the cross appeal has been withdrawn. That was in our response brief. We have withdrawn. Yeah, that's what I thought. Okay, so it's 15-15-5 then? Yes, sir. Okay, thank you. Mr. Botti, you may proceed. Thank you, sir. Good morning, justices. My main argument is that when I responded to a complaint, it was for an issue. I filed my That's the only issue before the court. The responding party, my ex-client, filed a petition answer with two affirmative defenses. And the affirmative defenses alleged that Aldo Botti Law Firm had a conflict of interest when it represented my client, Sarah Weber, as well as her caretaker concerning two motions regarding getting documents from the BMO Bank. Counsel, good morning. Did the Botti Law Firm have a duty to detect Mary Barton's undue influence? Sarah Weber? I'm sorry, did I detect it? Absolutely not. Didn't the law firm have the duty to detect Mary Barton's undue influence? The law firm had a responsibility to the client, which it did do. And it did review and analyze and talk to the client and took precautions to make certain there was no undue influence. Well, were the requirements of Canon 1.7 to get consent followed here? Yes, it was, ma'am. There's testimony. Is that part of the record? Yes, it is. I testified. My secretary testified. There was a dead man's act, which we did not allege in it, that was in full force and effect. There was no testimony from any witness on behalf of Sarah Weber that there was any undue influence or that I failed to detect it. All the testimony is that I did not see any type of undue influence, any wrongdoing on the part of Mary Barton, as her name, the caregiver. And I met with my client individually, separate from Mary Barton. Also, most importantly, on about November 7th or 9th of 2015, Judge Russo conducted an interrogation of my client outside the presence of Mary Barton, the caregiver in the courtroom, and concluded, it's in a record, that he sees no influence by any person. He asked her whether or not there was any influence. She said there's no influence by anyone. I'm doing this on my own. This is what I want to do. She was very cogent. She explained to the judge, her businesses, how she started it. And this was about 10, 15 days before her husband filed pleadings alleging she was an uncompensated. She was suicidal. She was delusional. That was not at all the case. It's just the ranting of a husband who was removed from the home based upon his wife's testimony of his wrongdoing. Mr. Boddy, excuse me, was there some allegation, maybe in the, the, one of the pleadings that Mrs. Weber could not be, she couldn't function without Ms. Barton being present or she needed Ms. Barton to be present? Yes, that's from admissions by Ms., by Sarah. We had, she filed affidavits and verified pleadings, which were, are admissible as admissions. That's what she said. She said that in, in court. She said it on various occasions throughout the trial. And, and I, I must also, if I may, her doctor testified that in, I think it was January, 2017, that she knew what she was doing. She made her own decisions. And then her depositions, we took Sarah's deposition, my ex-client's deposition in, I believe January 26, 2017. And she testified to have a brain. I think for myself, nobody tells me what, what I, how to think. I can read. I can, and she went through the, everything, including that she wanted the divorce and she wanted to end the, she wanted a divorce because she wanted to leave her assets to those people whom she believed she wanted to leave them to. And she had, she was estranged from his, her family at the time. There's other history involved too, but at the time she was estranged from her, her children. She had found out that one of her children had written a will that she signed without looking at it, giving everything to that child. And the will was apparently from calling from my client, prepared by a lawyer who had lost his license, who was married to one of the daughters that filed the affidavit seeking auto protection three months later. But I did everything from the day one. I, I, when she came in to see me in October of 2015, I had four appointments with her and I would not do anything unless I was absolutely clear. She knew what she was doing. She brought her sister and her father, her brother-in-law into the office and I conversed with them and she made the decision to proceed with the divorce. And I, I was very careful from day one in dealing with her. I always had someone present, someone, one of the secretaries and some of the lawyers were there. When I explained documents, I spoke to her independent of her caregiver and, and she made every decision on her own. There was no influence, no attempt by the caregiver. She never asked me to do anything or directed me to do anything. And that's essentially what it is. And we, that's how we conducted it from the time before I was retained and until the time I was removed. And when I was removed, I wanted to speak to her and I was terminated. I wanted to meet with her after I had a conversation with her concerning the auto protection injunction that was entered on her about March 7, 2017. The auto protection was entered without giving me proper notice and a lot of other issues involved. But I spoke to my client on the phone after I got, and I didn't know if the order was entered. I received it, well, we received it the day before at 5.25 PM after the office was closed. And I, I did have knowledge of it. And in the morning, the next morning, I was tending to submissions with my wife who was ill. And I got the phone call and by, I got back to the office within an hour or so after I got noticed that there's something had been filed. And we, we did not go to court. It was, it was late. And most importantly, in reference to the auto protection, I may be rambling, but I don't know if I'm answering your question, but auto protection was entered on March 7th, but significantly, significantly, the party who got the auto protection filed also on that date, a motion to terminate her mother's temporary maintenance while her mother was dying and she died within 60 days less. And that was filed as well as the, I got that motion. I also, you know, anyway, I don't want to ramble on. Well, Mr. Roddy, let me, let me ask a specific question about 508 proceedings. Have you, I mean, what's the purpose of a 508 proceeding? 508 proceeding is a statutory proceeding to allow a ex attorney who, you know, a client who has to get out of the case. That's one. And 508C is where the attorney seeks attorney's fees. I was owed 140 some thousand dollars in fees. And I filed that after I was terminated and the issue before the court, the only issue that the judge has to decide on my petition is whether or not the fees are necessary and reasonable. And in fact, although there were, there was another ruling before the ruling on your actual fees, the trial judge did say that your fees were reasonable. The hourly rate was customary, did definitely agree in that regard. Did the trial court did not. All right. So then the issue becomes how was the, how was the question of your conflict of interest introduced? Was it introduced by rule? Did they rely on rule? Did they rely on other information? What was specifically relied on in making that decision? There's no, no evidence, none whatsoever. If I may, the answer that Sarah filed accused said that every, almost everything I did was unreasonable, unnecessary. And that, and that I had a conflict of interest in representing Mary Barton and Sarah regarding a BMO motion, a subpoena to the two subpoenas. And they relied on a Newton case, which is a case that deals with a contract being void of initial because of an existing conflict. There was no ever, ever was I advised that they were seeking, they were filing a petition and it's not on a record anyway. Excuse me. The only issue before the court was my petition and their allegations and affirmative defenses to an affirmative evidence that I violated code of ethics, which is not a cause of action. Did you know before the hearing council that that there would be this claim of undue influence made? No, not at all. In any way? No, there was in the, in the, their answer that made allegations of being isolated. There was no, there was no element, no element, no allegation. And, and most importantly, that this is the judge's ruling. It's, you know, if we just set aside all the pleadings, the judge's ruling is that there was a Mary Barton unduly influence Sarah, not on a specific date or a specific action that Aldo bodies law firm should have known and, and detected. And that was the conflict that apparently is a kind of, it's a confusing order, but that the point is the judge made a violation, you know, it, although he, he sites in it at 1.7, a breach of he said, I had a conflict of interest because I didn't detect it or reading it another way is that because of an undue influence on a part of Mary that I did not know of. And I was never proven that the, the, apparently the consent to represent both parties was in some way affected by this undue influence, but there was no evidence. There was no testimony that my representation that was done on the under undue influence or Mary undo Mary Barton caregiver unduly influence my client at any time. There was no evidence. There was no allegation, nothing in a record that says that on a specific date, especially in June and October of 2017, when those motions to, to coerce those subpoenas were, were argued and filed. There's nothing in a record connecting Mary Barton would causing Sarah to give the consent. And that, that is the issue. I went to court dealing with whether or not I had violated a code of conduct by representing two people at the same time. And the evidence was clear. There was no other evidence contradictory. They had no with, as I look at it, as the end justifies the means. And that that's exactly what they did. They had no, no evidence whatsoever. No one testified. The only person who tested a question, you've indicated that there was no evidence. And in fact, you make it clear that there was no expert who might have testified to a breach of your fiduciary duty or a conflict of interest. Do you have any case that says they must do that if this is going to be their allegation? Well, they can't, you know, it's not, they don't have to do anything. It's the court cannot find a violation unless there's an expert, the expert, there's various cases, the Pagano from the second district in order for the judge to conclude that there was a conflict of interest or breach of fiduciary duty is really the phraseology breach of fiduciary duty. An expert must testify that cannot testify unless the breach is so gross. So so obvious, like a violation of statute of limitations. And if you read the order that you have to go through you know, trying to figure out what the order is, there is no way that the way the judge concluded that I had some conflict that a lay person would understand that he had to have an expert. There was no expert. They presented no expert. They had no, they had no 213-2 or three experts. All they had is lay witnesses. And the only witness they had, they put on an attorney who fabricated testimony in court. Well, first you said there were no witnesses or evidence and now you say there is. No, there wasn't. I never, I didn't mean that. I said they had one witness and he testified concerning occurrences that were he were false and nothing to do with not had nothing to do with my representation of a dupe of interest. It was dealing with an issue of appointment of a guardian at light and for an adult. And he testified that the judge it's in the record that the judge who was hearing a case saw the caregiver get up before my client, Sarah, as she's sitting on a witness stand testifying and the judge threw her out of courtroom or told her to leave the courtroom then had all the attorneys go into chambers. And she then said, this is terrible what she's doing and ordered a order and then ordered a guardian at light to be appointed for the adult, my client, which did not occur. It did not occur. And the record is very clear that there's fabricated testimony and you got to understand a person who testified to that fabricated testimony represented the, my client's personal representative, Mr. Schmidt, who's married to my client's daughter. And then there's another daughter, Karen, Karen and Kirsten and Noel all were represented by this attorney who was testifying as well as Mr. the decedent husband. Your time is up. Are there any other questions from the panel? No, no, thank you. Not at this time. Okay. Thank you. You'll have an opportunity to make rebuttal Mr. body. Thank you, sir. Okay. Mr. Christianson, you may proceed. Thank you, your honor. And good morning, justices for it may please the court. Again, my name is Tom Christensen. I represent happily Andrew Schmidt as personal representative of a state. The continued focus by Mr. body on his contention that he decided, in fact, his opening statement was, you know, I looked and I found that there was no one do influence on continues to show how much he misses the point. It is the allegations of undue influence that create the conflict of interest. If the client walks into my office and says, you know, I'm being sued by individual a and I want you to represent me. And I also represent individual a, I don't do my own investigation as to the allegations of individual a, it is the conflict in the claims and the allegations that creates the conflict. You don't have a trial within a trial. Maybe the reason there's no evidence of as Mr. body contends, if that's true of undue influence is that he representing Sarah, knowing that there were allegations of undue influence on the part of Mary did not rather than defending Mary by moving to quash a subpoena, which would show the extent of the, of the money taken, did not pursue those claims of undue influence. So what judge Fullerton found wasn't based upon, is there undue influence or is there not, that would be a trial within a trial. What he found and what Mr. body in his brief admits is that as early as September, 2015, there were these serious allegations out there. And it is the conflict in the allegations I would submit to your honors. And I believe that, that, that was the focus that, that judge Fullerton had was to say that when you have all of these allegations floating around out there, you cannot defend the, the, and you cannot represent the party who is alleged to be exploiting the elderly person and the elderly person. But isn't Mr. Christensen, isn't it well, is it a fact that Ms. Weber, Mrs. Weber had chosen Ms. Barton to be her aid or to be her attendant because of her stroke and other issues? The answer, I don't believe that there's any allegation that Ms. Barton somehow wrongfully insinuated herself or without Sarah's consent acted as her caregiver. And didn't, didn't Mrs. Weber also say in one of the order of protection proceedings or something of that nature that she, she really relied on Ms. Barton for her assistance? Which is a fundamental red flag as to undue influence dependence, dependence and reliance upon this caregiver who now steps over the line and it's undisputed, you know, now she's not just giving her baths and doing her hair. She's insinuating herself into the financial life of Sarah. That is a red flag to anyone. So all of these comments that are included in the briefs about, oh, well, no, I thought Mary was great because I needed her and she was, I, she was taking care of me. Okay, but Mr. Christensen, these insinuations are coming from family members, a large, in large part, who think that they're going to be left out of her, out of her will or out of her whatever. And they, the insinuation, what, what do they prove? What, what can they that that's not the case? I mean, we've got three daughters. We have a husband who unfortunately also dies, you know, because they don't like what's happening. They don't like that, you know, mom's spending her money or they don't like, you know, how she's being taken care of. Therefore, we can say all sorts of bad things about the caregiver. What's that authority? That would certainly, if the caregiver wished to defend against those claims, the caregiver could question the motives of those asserting the claims. That would, that's, that's a perfectly fine approach for a defendant in an undue influence case to take, is you've got ulterior motives. You're just looking out for yourself. This case is about conflict of interest and conflict of interest only. And when you look at conflict of interest, what you ask is, are there, are there conflicting claims among these parties? Counsel, counsel, with all due respect, isn't this case about, it's a 508 C case. It's about whether the attorney fees were reasonable or necessary. He always has to prove disciplinary proceeding, nor is it a malpractice case. Isn't that correct? Correct. But he always has to prove how is this relevant? It's it, the question is whether he is entitled to his fees. I mean, what 508 C essentially does is excuse the attorney from having to sue for his fees. And it gives him a tool to seek his fees within the divorce. It's just as well. I understand what the proceeding is about, but I mean what it's for, but I'm asking how does, how is this undue influence claim relevant to it? Because he has a contract for his fees and his contract incorporates the rules of professional conduct and the rules of professional conduct prohibit what he did. Otherwise, if you're on to follow your honor's logic, he could do almost anything, but say, well, my fees were reasonable and necessary. Therefore I get paid. The rules of professional conduct are a, are a, are an threshold issue and your compliance with your fiduciary duties, your performance in compliance with the rules of professional conduct is, is the, the, the, the first question that you have to ask. Right. And I apologize. I forgotten what case law you have supporting this point that you just made. What case law is cited in your brief, the, the, the, this is relevant to the issue of fees and can be a bar to fees. Well, what we cited is, is the case law, which says that a breach of fiduciary duty. And I'll, let me come back to that in a minute. A breach of fiduciary duty is always a basis to order forfeiture or disgorgement of compensation. And, and the point I would make to you, and this is what the court found is that the duties are governed by the rules of professional conduct. In other words, the attorney has fiduciary duties. What do you look to, to determine the contour of those, of those fiduciary duties and the rules of professional conduct would always be the first place that you would look. That just seems to follow logically, but, but certainly we, we, we cited copious case law to your honors, which holds that they're in the case of a breach of fiduciary duty. And again, we're not alleging Mr. Body engaged in undue influence. We're engaging that part of his fiduciary duties were to zealously pursue on behalf of Sarah, the claims of, of undue influence by Mary that were floating out there. And that was part of his fiduciary duty. And there's copious case law, which says, if you fail to follow those fiduciary duties, you forfeit your compensation. And that is well within the discretion of the court of the court of chancery has broad discretion to order that I mean, there were claims and allegations of money being used for gambling by both of them and withdrawals being made from the, from the bank accounts. And it's evident that there was money which moved and judge Fullerton found and judge and Mr. Body does not dispute in judge Fullerton's findings that, that in fact, there were withdrawals from, from Sarah's bank accounts to, and paid to and assuming that these withdrawals were wrongful. What was Mr. Body supposed to do in so far as determining that he had a conflict of interest. What he should have done was say to Mary, look, you have claims of conflict. So for example, let's take the motion to quash the subpoena. You have claims of conflict of interest against you. I cannot file an appearance on your behalf. You are free to go get your own attorney to, to move, to quash the subpoena, to move, to dissolve the TRO anything else, but I will not represent you or file any pleadings on your behalf because doing so is directly conflicting with my duties to my client, Sarah, who was alleged to be the exploited person that Mary are exploiting. And you could certainly say that on behalf of Sarah, other than asking Mary, did this happen and asking Sarah, who's the alleged exploited person, did this happen, that he could have filed claims on behalf of Sarah and actually engaged in discovery and litigation to pursue those claims, or he could have said, that's not what I do. I'm a divorce attorney, go get another attorney, but to instead come in and represent Mary, when you have these conflicting claims is totally impermissible. You seem to be missing something. Number one, these are allegations made by a third party, which I believe was Carl or people of his ilk. That's number one. And number two, there seems to be in the record, some indication that Sarah asked or requested Mr. Boddy to represent Mary, not in general, but in so far as subpoenas that were issued to banks. And in that, this would adversely affect Sarah. And so if Mr. Boddy was a competent lawyer, wouldn't he advise of the conflict and get informed consent? Or is there some other standard that I'm not aware of, that requires him to tell Mary and then turn to Sarah and say, I will not represent Mary. And if you demand that I represent Mary, I will withdraw from the case. I think I'm understanding your Honor's question correctly. The issue of informed consent, I believe the record is barren of evidence of informed consent. The citations to the record provided by Mr. Boddy indicate at most that Sarah had some knowledge of the dual representation. But as far as what would be, in my opinion, informed consent, which is to say to Sarah, this person is alleged to have engaged in undue influence against you. Yes, by a third party, but the allegation is there. That is a directly adverse claim to your interests. If it's true, the thing that would be your best interest would be to pursue those claims, not defend against them or minimize them. And this creates a conflict of interest. And if you wish me to proceed. Where does mere accusation create a conflict of interest? I am aware of instances where allegations with commensurate or with evidence thereafter following and a trial court's finding of a either on appeal or otherwise, it was determined to be not against the manifest weight of the evidence. But I'm not aware in this record that there was anything suggesting that there was lack of informed consent. Your allegation without evidence, which I believe is part and parcel of your claim that there is a conflict of interest has to be based on something other than ipso facto accusations. Well, I mean, you're on a rule 1.781 specifically provides that the conflict exists if the representation of one client will be directly adverse to another client. So I would read that as suggesting that it's not again, it's not the underlying truth of the claims. It's the adversity of the claims between and among these two different clients. I come back to it. But wait, Mr. Christensen, if that were the case, anytime that you felt not you personally, but a litigant wanted to fire their attorney, or the other side wanted to get a new attorney to represent the other party, they would simply say, Oh, wait, we have we have, we have some knowledge. And we think that so and so is hurting somebody is hurting this client is taking money from this client is adversely affecting this client. And if that's your theory, then that can happen just about anytime. It doesn't need any proof, I think is what Justice McLaren is talking about. Only if you're going to represent two clients, which is what Mr. body did that would bar you're correct anytime that you have allegations. I mean, I was going to object when Mr. body was testifying and but but I will simply point out in the normal practice of a law office to if a client comes in, and you have another client who's making claims against that client, you can't represent both of those parties. And you don't say, well, I'm going to find out if the claims are true or not. You say we have, we have directly adverse claims between these parties. We don't we're just the lawyers, we would have to do discovery and so forth. How how was representing the second client, Mary, insofar as subpoenas were concerned, create a conflict between the two clients or a conflict between the attorney and Sarah? Because what he should have said next is what how is it relevant? Because I'm sorry to interrupt you, but the the subpoena would show it would be one piece of evidence of Mary's bank accounts. I mean, if Sarah is my client, and there's an allegation of undue influence, and there are in fact, red flags of undue influence, I want to see those bank accounts too. I don't move to quash that subpoena. I say flags usually are something other than allegations, especially from an opposing counsel in a bitter divorce case. Again, he's it's it's not seeking to disqualify Mr. body from representing his client Sarah. It's just saying you can't represent Mary with all of this out there. And again, that's what Judge Fullerton found is that just looking through the record, there were serious issues being asserted about the existence of this undue influence, whether it was born out to be true or not. You can't accept that dual representation with these conflicting claims. And nobody's saying he has to resign and Sarah's attorney, he just can't represent Mary. Well, are you attempting to argue that Mr. body is strictly liable for what went down? No, I'm saying that Judge Fullerton was well within his discretion to to forfeit fees under this circumstance. How can you forfeit fees if there has not been a conflict of interest, there was a conflict of interest. And the basis of the conflict of interest was that he knew or should have known. And my question to you is, where's the evidence that he knew or should have known? He knew or should have known of the conflicting claims because there was a petition for a TRO on faith in on file in September where we're missing each other and your honors. I can detect that your honors don't aren't necessarily in agreement with what I'm saying. But you don't ask yourself, is there undue influence? You ask yourself, are there conflicting claims? And if there are, you decline the second representation, there are conflicting claims between you and my existing client. I cannot represent both of you under these circumstances, I will decline the second representation. Your time is up. Does the panel have any other questions? Well, I do have one, and I hope it will be quick. My question will be, what gives a trial court, as in Judge Fullerton, the right to basically hold an ARDC hearing, which sounds like is what happened here? Well, what he stated on the record is, look, you're at heart, a claim for that your attorney client agreement itself incorporates the rules of professional conduct. I have the agreement here. It's been in the record, and I don't need to, I don't need any quotation from it. I understand what it says. But did he or did he not basically rely primarily on this rule in order to make his decision? He did. Absolutely. And I think he found but to go a step further, he relied upon that rule based upon his sense that the rule is part of the contract, and that the rule defines the attorney's fiduciary duties. Thank you. So in essence, you're saying he found there was a breach of contract, and that was because of the violation, and that was sufficient to have all of these fees disgorged. He didn't expressly find a breach of contract, but he referred to rule 1.7. He referred to the contract. And he said, in effect, you have it in your contract, you have to comply with the rules, you didn't comply with the rules, forfeiture of your fees is an appropriate remedy under these circumstances. And again, there is case law, a copious case law regarding forfeiture in such circumstances. Thank you. Thank you. Mr. Boddy, you may make rebuttal. I have nothing further to add. I think it's covered. Your Honor. Thank you. We will then take the matter under advisement and render a disposition in apt time. Mr. Marshall, will you please close out the proceedings? Thank you. Thank you, gentlemen, for your argument. Thank you.